UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ROBERT E. McDANIELS, JR. | ) | |
|    Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 21-3154 |
| | ) | |
| JAKE ZIMMER, et. al., | ) | |
|    Defendants | ) | |

SUMMARY JUDGMENT ORDER

JAMES E. SHADID, U.S. District Judge:

I. BACKGROUND

The *pro se* Plaintiff has five claims centered on the alleged use of excessive force and the failure to provide medical care. *See* November 15, 2021 Merit Review Order.

Specifically, Plaintiff alleges:

> 1) Defendants Staunton City Police Officer Shawn Throne and Macoupin County Deputies Jake Zimmer, Todd Paige, and Matthew Marburger used excessive force or failed to intervene to stop the use of excessive force during his arrest on July 18, 2019.
> 2) Defendants Zimmer, Paige, Marburger, and Throne committed the state law tort of assault and battery on July 18, 2019.
> 3) An official capacity claim against Defendant Sheriff Shawn Kahl based on a pattern of excessive force against arrestees.
> 4) Defendants Sheriff Kahl, Jail Administrator Evan Ibberson, Correctional Officer Tommy Ruyle, Nurse Tracey Hammitt, Nurse Mary Dambacher, and Dr. John Doe violated Plaintiff's constitutional rights when they each either denied or delayed medical care for Plaintiff's serious medical condition.
> 5) A state law medical malpractice claim against Defendant Nurses Hammit, Dambacher, and Dr. John Doe.[1]  *See* November 15, 2021 Merit Review Order; *see* April 5, 2022 Minute Entry.

---

[1] Plaintiff was previously advised he may only proceed with this medical malpractice claim if complies with the requirements of the Illinois Healing Arts Malpractice statute by the summary judgment deadline. *See* November 15, 2021 Summary Judgement Order, p. 5-6, *citing* 735 ILCS 5/2-622.

1

Plaintiff was taken to the emergency room on July 18, 2019, where he received treatment for a broken nose, fractured hand, and lacerations. However, Plaintiff says when he returned to the jail, he did not receive follow-up care. On July 24, 2019, Plaintiff was transported to an outside hospital and received emergency surgery on his hand. Plaintiff says he has permanent loss of function in one of his fingers. *See* November 15, 2021 Merit Review Order, p. 4, (Comp., [1], p. 4).

Medical Defendants Dambacher and Hammit have filed a Motion for Summary Judgment claiming Plaintiff failed to exhaust his administrative remedies before filing his complaint. [52]. The remaining Defendants have filed a partial Motion for Summary Judgment alleging Plaintiff failed to exhaust and his state law battery claim is barred by the statute of limitations period. [61]. Although the Defendants filed their motions separately and Plaintiff filed separate responses, the Court will consider both in this order due to the overlapping claims.

## II. FACTS

Plaintiff was a detainee in the Macoupin County Jail from July 18, 2019 to July 26, 2019. Defendant Tracy Hammitt is a Licensed Practical Nurse and Defendant Mary Dambacher is nurse practitioner. Both nurses provided medical care to inmates at the jail.

Defendants Page, Marburger, and Zimmer were employed as county law enforcement officers. Defendant Throne was a police officer for the City of Staunton,

Illinois. Defendants Page, Marburger, Zimmer, and Throne arrested Plaintiff on July 18, 2019, and he entered the jail the same day.

The Macoupin County Jail has a detailed grievance procedure which was in effect during Plaintiff's stay.  A detainee is first required to verbally report his grievance to an officer who should attempt to resolve the issue.  If this is unsuccessful, the grievance is forwarded to the Sergeant. "If the grievance is not resolved, the officer will request the inmate put the grievance in writing. Inmate will be taken to hold cell or private area to write grievance." (Def. Mot., [52], Med. Def. # 667).  The jail had a specific document entitled Inmate Grievance Form for inmates to use. (Def. Memo., [61], MC #0007-0008).

The Jail Administrator will then review the grievance, and if needed, will meet with other personnel to settle the complaint.  At the time, Defendant Ibberson was the Jail Administrator and said it was his customary practice to meet with the inmate in his office to discuss the specific complaint. (Def. Memo., [61], Ib. Aff., p. 2). If the issue remained unresolved, the inmate could forward his grievance to Defendant Sheriff Kahl.

Plaintiff agrees the Macoupin County Jail had an established grievance procedure and he does not dispute the requirements.  Plaintiff also admits he did not submit any written grievances during July of 2019.  However, Plaintiff says "there is no process to file a grievance if the inmate can't write."[2] (Plain. Resp., [70], p. 12).

---

[2] Plaintiff's responses also include facts pertaining to the merit of his claims, but this information is not relevant to exhaustion or the statute of limitations. See i.e. (Plain. Resp., [70]. Aff. p. 3 -6).

3

Plaintiff maintains he first tried to exhaust his administrative remedies by talking with officers. Plaintiff says on July 18, 2019, he told Officer Tommy Ruyle he was in severe pain, and he had not received prescribed medications or medical care. (Plain. Resp., [70], Aff. p. 2). The Officer told Plaintiff he would have to wait until the next day to see medical staff.

On July 20, 2019, Plaintiff says he "initiated a grievance/complaint" with Officer Tyler Burrow concerning the delays and problems with medical care. Plaintiff says the officer did not respond and did not ask him to put his complaints in writing.

Officer Burrow states he wrote an incident report on July 20, 2019, concerning an interaction with the Plaintiff. Plaintiff told the officer he needed his leg wounds cleaned, so the officer escorted him to the booking room and cleaned and bandaged his legs. (Def. Reply., [77], Bur. Aff., p. 2).

Plaintiff then said he had not received his prescribed medications. Another officer retrieved Plaintiff's hospital paperwork, confirmed the prescriptions, and called Defendant Nurse Dambacher. (Def. Reply., [77], Bur. Aff., p. 2). In addition, Officer Burrow says he assisted Plaintiff by filling out a sick call request for him and submitting it. (Def. Reply., [77], Bur. Aff., p. 2).

Nonetheless, Officer Burrow says he does not recall the Plaintiff ever asking to submit a grievance. (Def. Reply., [77], Bur. Aff., p. 2). If Plaintiff had needed assistance,

the Officer claims he would have assisted him by filling out the form. (Def. Reply., [77], Bur. Aff., p. 2).

Plaintiff next states he tried to follow up with his grievance when he returned to the jail after hand surgery on July 26, 2019. Plaintiff maintains he told Sergeant Masinelli he had submitted a verbal grievance for delaying medical treatment. Plaintiff claims Sergeant Masinelli said he would relay Plaintiff's grievance to Defendant Jail Administrator Ibberson. However, since this conversation was on a Friday, the Sergeant said it would have to wait until Monday, July 29, 2019, when the Jail Administrator returned. (Plain. Resp., [70], Aff., p. 5-6).

Plaintiff claims Sergeant Masinelli knew the Plaintiff would no longer be at the jail on Monday, because the Sergeant had already requested Plaintiff's transport to the Illinois Department of Corrections.

Plaintiff also claims Sergeant Masinelli knew Plaintiff was not able to put his grievance in writing since Plaintiff could not even write his signature at the hospital. (Plain. Resp., [70], Ex. 28). Furthermore, Plaintiff says his hand injuries were obvious.

Sergeant Masinelli admits he transported Plaintiff to and from Memorial Medical Center in Springfield, Illinois, on July 26, 2019 for his hand surgery. (Def. Reply, [77], Mas. Aff., p. 2). The Sergeant says he does not recall Plaintiff stating he wanted to file a grievance or inquiring about a grievance. However, Sergeant Masinelli maintains if

Plaintiff had told him, he would have assisted Plaintiff. [3](Def. Reply, [77], Mas. Aff., p. 2).

## III. LEGAL STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact." Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.; Harvey v. Town of Merrillville*, 649 F.3d 526, 529 (7th Cir. 2011).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant.

## IV. ANALYSIS

A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

---

[3] Plaintiff claims he again tried to follow up on the status of his grievances by sending letters from IDOC in January and May of 20220.  However, Plaintiff was no longer in the Macoupin County Jail and the letters are not relevant to the issue of exhaustion.

All Defendants argue they are entitled to summary judgment on Plaintiff's medical claims because Plaintiff cannot demonstrate he exhausted his administrative remedies before he filed his complaint. The Prison Litigation Reform Act (PLRA) provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Therefore, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo, v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

The Defendants note the Macoupin County Jail had an established grievance procedure. Plaintiff admits he was aware of this procedure and further agrees he was required to exhaust his administrative remedies before filing his lawsuit. The grievance procedure initially only required a verbal complaint, followed by a written grievance if the issue was not resolved. Defendants state Plaintiff never inform any officer he wished to pursue a grievance concerning his medical care, and he did not submit a written grievance during his stay.

Plaintiff says he exhausted all available administrative remedies. The PLRA does not define "availability" for purposes of the exhaustion requirement. However, the Seventh Circuit has held that the "availability of a remedy is not a matter or what appears on paper, but, rather, whether the paper process was in reality open for the prisoner to pursue." *Wilder v Sutton*, 2009 WL 330531 at *3 (7th Cir. Feb. 11, 2009) *citing Kaba v Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

For instance, the grievance procedure is unavailable "if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In addition, a remedy can be unavailable to a "person physically unable to pursue it." *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011)(inmate incapacitated due to stroke).

Plaintiff says he attempted to begin the grievance process with a verbal complaint, but officers did not respond. In addition, Plaintiff says he was physically unable to write a grievance.

Defendants note the Seventh Circuit has held "disputed facts ought to be resolved by a judge, not a jury," and based on the record, the Court should grant summary judgment in their favor. *Pavey v. Conley*, 663 F.3d 899, 901 (7th Cir. 2011). "It's true that while a trial is the standard means of resolving factual disputes, a judge can resolve an issue of exhaustion, like other threshold issues … himself, in order to avoid multiple trials in the same case. But he can do that only after conducting an evidentiary hearing." *Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014); *citing Pavey v. Conley*, 544 F.3d 739, 741–42 (7th Cir. 2008).

8

Therefore, the Court will deny the Motions for Summary Judgment on the issue of exhaustion but will proceed to an evidentiary hearing pursuant to *Pavey.*

B.  STATE LAW BATTERY CLAIM

Defendants Zimmer, Paige, Marburger, and Throne maintain Plaintiff's State law claim of assault and battery is barred by the statute of limitations period. Plaintiff's claims pursuant to 42 U.S.C. §1983 are subject to the two-year statute of limitations period governing personal injury claims in Illinois. *See Wilson v Giesen*, 956 F.2d 738, 740 (7th Cir. 1992), *citing Wilson v Garcia*, 471 U.S. 161, 279 (1985); *see also Farrell v. McDonough*, 966 F.2d 279, 280-82 (7th Cir. 1992). However, for "claims brought under state law, not Section 1983" … "the limitations period is one year, not two." *Boyd v. Hein,* 2015 WL 3476312, at *4 (N.D.Ill. June 1, 2015), *citing Henderson v. Bolanda,* 253 F.3d 928, 931–32 (7th Cir.2001); 745 ILCS 10/8–101).

Plaintiff claims the Defendants committed assault and battery on July 18, 2019. Therefore, Plaintiff had to file his claim on or before July 18, 2020. Instead, Plaintiff filed his complaint on July 12, 2021, long after the statute of limitations period had run. *See ie. Boyd v. Hein*, 2015 WL 3476312, at *4 (N.D.Ill. June 1, 2015).

Plaintiff argues the statute of limitations period was tolled during the COVID pandemic. However, Plaintiff has not cited to any legal authority for this claim, nor is the Court aware of any authority which would allow a plaintiff to pursue a claim nearly a year after the deadline. The Motion for Summary Judgment on Plaintiff's state law battery claim is granted. [60].

CONCLUSION

When Plaintiff initiated this lawsuit, he named Jane or John Doe doctor and nurses as Defendants. [1]. During an April 5, 2022 hearing, the Defendants identified Nurses Dambacher and Hammitt as medical providers. *See* April 5, 2022 Minute Entry.

The Court then asked the Defendants to "identify whether there was a doctor who provided medical care or approved medical care such as prescriptions at the jail during the relevant time frame." April 5, 2022 Minute Entry; *see also* August 25, 2022 Text Order. Defendants responded stating Nurse Dambacher provided medical care at the jail during the relevant time, but there was no treating doctor or other medical provider. [63].

On September 13, 2022, the Court ordered Plaintiff to provide any additional information concerning Dr. John Doe, or the Defendant could be dismissed. *See* September 13, 2022 Text Order.

The October 23, 2022 deadline has come and gone and Plaintiff has filed nothing further concerning this Defendant. Plaintiff named Doe Defendants because he was unsure who was involved in his medical care during his brief stay at the jail. Defendants clarified and two Medical Defendants were added to this case. Plaintiff has not provided any information to indicate there is any other relevant medical provider or doctor. Therefore, the Court will dismiss Defendant Dr. John Doe.

For clarification of the record, Plaintiff now has the following four surviving claims:

    1) Defendants Staunton City Police Officer Shawn Throne and Macoupin County Deputies Jake Zimmer, Todd Paige, and Matthew Marburger used excessive

force or failed to intervene to stop the use of excessive force during his arrest on July 18, 2019.

2) An official capacity claim against Defendant Sheriff Shawn Kahl based on a pattern of excessive force against arrestees.

3) Defendants Sheriff Kahl, Jail Administrator Evan Ibberson, Correctional Officer Tommy Ruyle, Nurse Tracey Hammitt, and Nurse Mary Dambacher violated Plaintiff's constitutional rights when they each either denied or delayed medical care for Plaintiff's serious medical condition.

4) A state law medical malpractice claim against Defendant Nurses Hammitt and Dambacher.

IT IS THEREFORE ORDERED:

1) Defendants Tracy Hammit and Mary Dambacher's Motion for Summary Judgment is DENIED [52].

2) Defendants Evan Ibberson, Shawn Kahl, Mathew Marburger, Todd Page, Tommy Ruyle, Jake Zimmer, and Shawn Throne's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part [60]. Summary Judgment is granted as to Plaintiff's state law assault and battery claim.

3) The Clerk of the Court is directed to dismiss Defendant Dr. John Doe pursuant to this order.

4) The Court will set this matter for a telephone hearing to schedule a *Pavey* hearing, determine whether it will proceed by video conferencing, and identify any relevant witnesses.

ENTERED this 3rd day of March, 2023.

s/ James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE